# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

17-237,
Consolidated with 17-238,
Consolidated with 17-239

LINDA M. SNAVELY, ET AL.

VERSUS

ACE PAIN MANAGEMENT, LLC, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2011-0381; C/W 2014-3917; C/W 2014-5373
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Van H. Kyzar, Judges.

**PRESCRIPTION EXCEPTION GRANTED; DISMISSED.**

**Alan K. Breaud**
**Timothy W. Basden**
**Breaud & Meyers**
**600 Jefferson Street, Suite 1101**
**Lafayette, LA 70502**
**(337) 266-2200**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
> **Ace Pain Management, LLC**
> **Rice Medical Management, LLC**
> **Margaret Rice, M.D., APMLLC**
> **Margaret A. Rice, M.D.**
> **Stacey E. Singleton**

**Joseph Lomax Jordan, Jr.**
**Max Jordan, Lawyer**
**1817 W. University Ave.**
**Lafayette, LA 70506**
**(337) 233-9984**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
> **Linda M. Snavely**

**James H. Gibson**
**Charles M. Kreamer**
**Michael O. Adley**
**Allen & Gooch**
**2000 Kaliste Saloom Rd, Ste. 400 (70508)**
**P. O. Drawer 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
> **J. Lomax Jordan, Jr.**

**SAVOIE, Judge.**

Defendants appeal the trial court's order consolidating three motions for sanctions filed in three separate actions, as well as the trial court's denial on the merits of those actions. Plaintiff and her attorney assert an exception of prescription. For the following reasons, we grant the exception and dismiss Defendants' motions.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties herein have an extensive litigation history arising out of a 2010 motorcycle accident involving Brian Snavely and Brian's subsequent death on August 18, 2012.

Following the motorcycle accident, Brian initiated an action in the Fifteenth Judicial District Court for Lafayette Parish ("the Fifteenth JDC") against the parents of the minor driver of another vehicle involved in the accident, as well as the parents' insurer. This action was assigned to Division C before Judge Rubin and given docket number 11-0381 ("the motorcycle action").

Both prior to, and following the accident, Brian received pain management treatment from Dr. Margaret Rice. Approximately two years after Brian's death, Brian's mother, Linda Snavely, initiated three separate actions alleging that medical treatment provided by Dr. Rice and/or various related medical entities caused or contributed to Brian's death.

First, on June 26, 2014, Ms. Snavely sought to convene a medical review panel against Dr. Rice, Mr. Stacey Singleton, who was an accountant, as well as the following entities: Margaret A. Rice, APMLLC; Rice Medical Management, LLC; and Ace Pain Management, LLC ("the Rice Entities"). However, according to the Patient's Compensation Fund ("PCF"), only Dr. Rice was a qualified healthcare provider entitled to a medical review panel. Defendants sought a docket number from the Fifteenth JDC, and the matter was assigned to Division K before Judge Michot and given docket number 14-3917 (hereinafter "the PCF action"). On September 10,

2014, Dr. Rice filed an exception of prescription, and on October 27, 2014, the trial court granted the exception and dismissed the PCF action against Dr. Rice. This court affirmed that judgment. *In Re: Professional Liability Claim of Snavely*, 15-207 (La.App. 3 Cir. 11/4/15), 178 So.3d 614.

On October 21, 2014, Ms. Snavely sought and obtained leave to file an amended petition in the motorcycle action (docket no. 11-0381). Therein, she asserted medical malpractice and wrongful death claims against the Rice Entities and Mr. Singleton. Shortly after, the pending claims against the minor driver and the insurer were dismissed following a settlement. On February 9, 2015, Defendants asserted an exception of prescription, which the trial court granted on March 10, 2015, dismissing the medical malpractice and wrongful death claims. This court affirmed. *Snavely v. Ace Pain Management, LLC*, 15-684, 15-903 (La.App. 3 Cir. 2/3/16), 184 So.3d 871, *writ denied*, 16-425 (La. 4/22/16), 191 So.3d. 1049.

Ms. Snavely separately filed a third action on October 21, 2014, also in the Fifteenth JDC, asserting medical malpractice claims against the Rice Entities, as well as Rice Urgent Care (hereinafter "the medical malpractice action"). The medical malpractice action was assigned to Division A before Judge Trahan and given docket number 14-5373. Defendants filed a prescription exception on January 30, 2015, and the trial court dismissed the action on prescription grounds on March 18, 2015. This court affirmed. *Snavely*, 184 So.3d 871.[1]

On June 23, 2016, the Rice Entities and Mr. Singleton filed a motion in the motorcycle action (docket no. 11-0381) seeking the assessment of attorney fees as sanctions against Ms. Snavely and/or her attorney, J. Lomax Jordan, arguing that Ms. Snavely's attorney violated duties imposed by La.Code Civ.P. art. 863 by signing and filing multiple petitions alleging the same prescribed claim. Also on June 23, 2016,

---

[1] Ms. Snavely's appeals of the trial court's dismissal of her claims in both the motorcycle action and the medical malpractice action were consolidated.

2

the Rice Entities and Rice Urgent Care filed a motion to assess attorney fees as sanctions in the medical malpractice action (docket no. 14-5373). Similarly, Dr. Rice filed a motion to assess attorney fees as sanctions in the PCF action (docket number 14-3917) on June 27, 2016, and a hearing was set for August 15, 2016.

On July 25, 2016, in the motorcycle action (docket no. 11-0381), Ms. Snavely filed a prescription exception, and other exceptions, arguing that the sanctions motions were untimely as they were filed after a final judgment had been rendered. She also filed a motion seeking to consolidate the motorcycle action with the PCF action and the medical malpractice action. Ms. Snavely's motion to consolidate was heard August 29, 2016. Following the hearing, the trial court granted the motion and signed an order consolidating the three matters. The order also denied the sanctions motions filed in the motorcycle action, the PCF action, and the medical malpractice action, stating that there was no violation of La.Code Civ.P. art. 863.

Defendants Dr. Rice, the Rice Entities, Rice Urgent Care, and Mr. Singleton have filed appeals in connection with each of the three trial court docket numbers, assigning as error the trial court's consolidation and dismissal of the three motions for sanctions. Those appeals have been consolidated in this court. Ms. Snavely has asserted a prescription exception in this court.

## ANALYSIS

We first address the issue of whether Defendants' motions seeking attorney fees as sanctions under La.Code Civ.P. art. 863 were timely. Ms. Snavely has asserted a prescription exception in this court, which we may consider pursuant to La.Code Civ.P. art. 2163.[2]

Louisiana Code of Civil Procedure article 863, which was derived from Fed.R.Civ.P. 11 and provides for sanctions for improper pleadings, "does not create a

---

[2] Louisiana Code of Civil Procedure article 2163 states: "The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to the submission of the case for a decision, and if proof of the ground of the exception appears in the record."

3

private cause of action, but is rather a remedial tool available to the court." *Montalvo v. Sondes,* 93-2813 (La. 5/23/94), n.6, 637 So.2d 127. In determining the timeliness of such motions, "we subscribe to the federal jurisprudence requiring that the motion be filed within a 'reasonable time frame,' one that affords the offending attorney an opportunity to defend his conduct and the court an opportunity to rectify it[3]". *Frazer v. Bruscato*, 34,021, p. 5 (La.App. 2 Cir. 11/1/00), 772 So.2d 293, 297. A sanctions motion under La.Code Civ.P. art. 863 is not the same as an action for malicious prosecution, and therefore, the requirement that the underlying litigation be complete prior to the filing of a malicious prosecution action is inapplicable to a sanctions motion. *See Frazer,* 772 So.2d 293; and *In re Interdiction of Thomson*, 602 So.2d 300 (La.App. 3 Cir.1992).

*Frazer* addressed the same issue that is currently before us; that is, whether a motion seeking sanctions under La.Code Civ.P. art. 863 was timely, when it was filed after the underlying action in which the allegedly offending pleading was filed had been dismissed, and after the dismissal was affirmed on appeal. The *Frazer* court affirmed the trial court's dismissal of the motion for sanctions pursuant to an exception of prescription, quoting favorably the trial court's reasoning, which we find persuasive:

> In *Mellon Bank Corp. v. First Union Real Est. Equity & Mortgage Inv.*, 951 F.2d 1399 (3 Cir.1991), the court found that a [Fed.R.Civ.P.] 11 motion for sanctions filed nearly 2 ½ years after a suit was filed in federal court was untimely. The court also found that the motion was not filed in the trial court before the entry of a final judgment as required by supervisory rule of the U.S. Court of Appeals, 3d Circuit. In the instant suit there is no such court rule but the wisdom and purpose of the rule seems eviden[t] to this court. A motion to sanction filed in the trial court following completion of the trial and the appeal process raises at least two problematic issues. First, what authority does the trial court have to act after the jurisdiction of the trial court is divested by appeal? And secondly, and more relevant to the

---

[3] Since La.Code Civ.P. art. 863 "is derived from Rule 11, Federal Rules of Civil Procedure [,] [t]he federal decisions afford us guidance for our interpretation and application." *Romero v. Chris Custa Flying Service*, 587 So.2d 803, 805 (La.App. 3 Cir. 1991).

> instant exception, can the purposes of Article 863 be
> effectively served after the underlying litigation is over?[ ]
>
> The imposition of sanctions usually serves two main
> purposes: deterrence and compensation; encompassed
> within those objectives are the related subsidiary goals of
> punishing litigation abuse and facilitating case management.
> *Navarro-Ayala v. Nunez*, 968 F.2d 1421 (1 Cir.1992).

*Id.*, at 296.

We also find persuasive the following reasoning in *Port Drum Co. v. Umphrey,*

852 F.2d 148, 150 (5th Cir. 1988), wherein the federal court rejected an action seeking

monetary damages under Fed.R.Civ.P. 11 for allegedly offending pleadings filed in a

separate action:

> [Federal Rule Civil Procedure] 11 is designed to regulate proceedings
> among parties already before the court in a particular case. And even as
> to such parties, the rule's primary purpose is to discourage groundless
> proceedings rather than to compensate wronged parties by means of
> affirmative relief. In expressing the unanimous view of this circuit, we
> have noted that "'*the imposition of sanctions pursuant to [Fed.R.Civ.P.]
> 11 is meant to deter attorneys from violating the rule.*'" *Thomas v.
> Capital Sec. Services, Inc.,* 836 F.2d 866, 877 (5th Cir.1988) (en banc)
> (quoting *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987) (en
> banc)) (emphasis in this court's original). Thus, "the least severe
> sanction adequate to serve the purpose," rather than a sanction
> necessarily designed to compensate the wronged party fully, "should be
> imposed." [*Thomas,*] 836 F.2d at 878.
>
> In this regard, *Thomas* suggests that the "least severe sanction"
> may often fall short of monetary compensation:
>
>> . . . What is 'appropriate' may be a warm friendly discussion
>> on the record, a hard-nosed reprimand in open court,
>> compulsory legal education, monetary sanctions, or other
>> measures appropriate to the circumstances.
>
> *Id*. Port Drum, however, seeks only monetary reward. It would be
> incongruous with *Thomas* and with the scheme of Rule 11 for the district
> court to entertain an independent lawsuit in which the only relief being
> considered is cash compensation. Nor would it really make sense for the
> court, assuming jurisdiction were present, to impose an alternative, lessor
> sanction (such as a reprimand) when no such relief is even requested (or,
> presumably, desired) by plaintiff Port Drum.

As discussed in *Thomas*, 836 F.2d at 879-881, a party seeking sanctions under

Fed.R.Civ.P. 11 must give prompt notice to the court of his intent to do so:

[A]n attorney may not remain idle after a "motion, pleading, or other paper" filed in violation of Rule 11 by his opponent has come to his attention. The advisory committee notes stress that "[a] party seeking sanctions should give notice to the court and the offending party *promptly* upon discovering a basis for doing so." Fed.R.Civ.P. 11 advisory committee notes (emphasis added). In the same manner that a failure to mitigate expenses may result in a corresponding reduction in the amount of attorney's fees and costs awarded, so also may a failure to provide prompt notice of an alleged violation to the court and the offending party reduce the ultimate award. *Donaldson* [*v. Clark*], 819 F.2d [1551 (11th Cir. 1987)]. Prompt notice of Rule 11 violations conserves judicial time and energy, as well as monetary resources, while at the same time deterring future violations.

. . . .

[T]his Court [has] implicitly condemned using Rule 11 to challenge generally all papers filed in a lawsuit at the termination of a proceeding. . . . Parties should not be allowed to "run up" exorbitant fees and expenses when responding to papers filed in violation of Rule 11; nor should litigants or courts remain idle in the face of possible violations. To allow such behavior would effectively transform Rule 11 from a shield to a sword, whereby guileful practitioners could profit from the misfortunes and mistakes of fellow professionals.

. . . .

[I]t is precept that sanctions must be imposed within a time frame that has a nexus to the behavior sought to be deterred. . . . Sanctions assessed by courts should not amount to an "accumulation of all perceived misconduct, from filing through trial," resulting in a "single post-judgment retribution in the form of a massive sanctions award." *In re Yagman*, 796 F.2d 1165, 1183 (9th Cir.1986), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987).

> The most obvious defect in this procedure is that it flies in the face of the primary purpose of sanctions, which is to deter subsequent abuses. This policy is not well served by tolerating abuses during the course of an action and then punishing the offender after the trial is at an end. A proper sanction assessed at the time of a transgression will ordinarily have some measure of deterrent effect on subsequent abuses and resultant sanctions. Such "prompt action helps enhance the credibility of the rule and, by deterring further abuse, achieve its therapeutic purpose."

*Id*. (citations omitted).

In the instant matter, Defendants' Motions To Assess Attorney Fees as Sanctions were essentially identical, and each asserted the following:

In the present case, and in two related cases, Ms. Snavely and her attorney, Max Jord[a]n, filed claims which were obviously prescribed. However, rather than merely filing a prescribed claim in one proceeding, Ms. Snavely and Max Jord[a]n filed three separate actions, all against the same Defendants, and all asserting the same prescribed claim. The repeated filing of the same prescribed claim in multiple separate proceedings showed a clear pattern of filing frivolous claims, needlessly increasing the cost of litigation, and harassment. None of the cases filed by Ms. Snavely and her attorney, Max Jordan, had merit. All were obviously prescribed. The result was that Defendant[s] were required to litigate three separate cases to conclusion. . . . This is the kind of abuse of litigation that Article 863 protects against.

. . . .

Wherefore, premises considered, Defendants . . . . respectfully request that . . . this honorable Court grant the present Motion to Assess Attorney Fees as Sanctions and assess all attorney fees and expenses incurred in the defense of this matter, and the related matters . . . under Louisiana Code of Civil Procedure Article 863.

The motions were filed twenty months after all three of the separate, allegedly offending petitions had been filed in each case, over sixteen months after all prescription exceptions had been filed, and after the trial courts' dismissals of the underlying claims had become final. Not once, prior to the conclusion and finality of the three separate matters, did Defendants suggest to the trial court that Ms. Snavely's and/or her attorney's filing of three separate actions was sanctionable under La.Code Civ.P. art. 863.

We find that under the unequivocal facts established by the record, Defendants' motions, which seek sanctions only in the form of compensation, were not timely as they were not filed in a reasonable time frame following Ms. Snavely's multiple filings or otherwise within a timeframe that had a nexus to the behavior that was sought to be deterred, which according to Defendants was "[t]he repeated filing of the same prescribed claim in multiple separate proceedings." Defendants were clearly aware of the perceived problems with Ms. Snavely's multiple filings, as reflected by their own prescription exceptions filed in each of the three cases, over sixteen months prior to the first sanctions motion. Waiting until after Ms. Snavely's claims were

dismissed on prescription grounds to file motions seeking monetary sanctions based upon the repeated prescribed claims is contrary to the primary purpose of La.Code Civ.P. art. 863.

Defendants rely on *Keaty v. Raspanti,* 00-221 (La.App. 4 Cir. 2/7/01), 781 So.2d 607 and urge us to find that their motions were timely because, as in *Keaty*, they were filed within a year of the finality of the trial court's dismissal of the underlying case wherein the allegedly offending pleadings were filed.

In *Keaty*, a client's former attorneys filed suit against the current attorney seeking a portion of legal fees that were collected. Ultimately, the trial court dismissed the plaintiffs' claims pursuant to a motion for summary judgment, the court of appeal affirmed, and the supreme court denied writs. Three months after the appellate court's decision, but *prior to* the supreme court's writ denial, the defendants filed a motion for sanctions under La.Code Civ.P. art. 863. The trial court granted the plaintiffs' exception of prescription, finding the defendant's motion for sanctions untimely.

In reversing the trial court, the appellate court in *Keaty* agreed with the defendants that the claim for sanctions had not prescribed "because it was brought . . . within less than a year after this [c]ourt rendered judgment affirming the dismissal of the [plaintiffs'] claims." *Keaty*, 781So.2d at 610. In so holding, the *Keaty* court found "no reason why sanctionable conduct should not be classified as an offense for prescription purposes," applied the one-year prescriptive period applicable to torts, and found that the one-year period began from the date of a final judgment as doing so "seems consistent with the concept of a continuing tort." *Id.* at 612. We disagree with the reasoning as sanctions motions are not separate causes of action and their timeliness is not determined by prescriptive periods applicable to tort actions. *Frazer*, 772 So.2d 293.

In rendering its opinion, the *Keaty* court also cited favorably to *Connelly v. Lee*, 96-1213 (La.App. 1 Cir. 5/9/97), 699 So.2d 411, *writ denied,* 97-2825 (La. 1/30/98). In *Connelly*, the plaintiff filed a legal malpractice claim against his wife's attorney on February 2, 1993. On September 1, 1993, the trial court granted the defendant's exception of no cause of action but allowed time for the plaintiff to amend his action. The plaintiff failed to do so, and on November 2, 1993, the trial court dismissed the plaintiff's action. A year later, on November 2, 1994, the defendant-attorney filed a motion for sanctions against the plaintiff, and the trial court denied the plaintiff's prescription exception. The court of appeal affirmed, stating :

> [c]onsidering the facts in this case, we feel that the imposition of sanctions *within a year after the plaintiff filed his objectionable petition* serves the policy purpose of deterrence and is not so remote in time from the behavior sought to be deterred . . . . Moreover, a year from the filing of the *plaintiff's petition* is not inordinately long."

*Connelly*, 699 So.2d at 417 (emphasis added).

We note that the *Connelly* court's analysis focused on the date the objectionable *petition* was filed, even though the petition in that case was filed more than a year before the motion for sanctions. There is no analysis in *Connelly* pertaining to its apparent conclusion that the motion for sanctions, which was filed after the dismissal of the underlying claim, was timely. However, we disagree with both *Connelly*, and *Keaty,* to the extent they support a finding that a motion seeking monetary sanctions under La.Code Civ.P. art. 863 filed after the decision in the underlying action had become final is timely, especially when the moving party was aware of the behavior sought to be deterred by the sanctions motion [i.e. the repeated filing of prescribed claims in the instant matter] prior to the finality of the underlying action. We therefore grant the exception of prescription, and the issues asserted by Defendants on appeal are now moot.

9

## CONCLUSION

For the foregoing reasons, the exception of prescription filed by Ms. Snavely and J. Lomax Jordan is granted. Defendants' motions seeking attorney fees as sanctions filed in each of the three consolidated matters are dismissed with prejudice. All costs of this appeal are assessed to Defendants.

**PRESCRIPTION EXCEPTION GRANTED; DISMISSED WITH PREJUDICE.**